# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | |
|---|---|
| OFFICE OF THE FULTON ) | |
| COUNTY DISTRICT ATTORNEY ) | |
|     Plaintiff, ) | |
| v. ) | CIVIL ACTION NUMBER: |
| UNITED STATES DEPARTMENT ) | |
| OF JUSTICE, an agency of the ) | |
| United States, ) | |
|     Defendant. ) | |

## COMPLAINT FOR DECLARTORY AND INJUNCTIVE RELIEF
## (FREEDOM OF INFORMATION ACT)

Having been stymied for more than 600 days from receiving *any* documents from the Department of Justice related to the shooting of Jamarion Robinson, Plaintiff Office of the Fulton County District Attorney ("Plaintiff" or "the District Attorney") brings this action against Defendant United States Department of Justice ("Defendant" or "the DOJ") to compel compliance with the Freedom of Information Act, 5 U.S.C. § 552 ("FOIA"). As grounds therefor, Plaintiff alleges as follows:

1

## JURISDICTION AND VENUE

1. The Court has jurisdiction over this action pursuant to 5 U.S.C. § 552(a)(4)(B) and 28 U.S.C. § 1331.

2. Venue is proper in this district pursuant to 28 U.S.C. § 1391(e).

## PARTIES

3. Plaintiff is a state government office charged with the investigation and prosecution of all felony violations of Georgia law that occur within Fulton County, Georgia (Atlanta Judicial Circuit). The District Attorney prosecutes all indictable offenses, as well as those that may be charged by accusation, and litigates these offenses in both the trial and appellate courts of the State of Georgia.

4. The DOJ is an agency of the U.S. Government and is headquartered in Washington, DC. The DOJ has possession, custody, and control of records to which Plaintiff seeks access.

## FACTS

5. On August 5, 2016, 14 law enforcement officers from eight separate local municipal police departments, along with at least one United States Marshal, traveled to the Parkside Camp Creek Luxury Apartments in Atlanta, Georgia to execute a State of Georgia arrest warrant for Jamarion Robinson (hereinafter "Mr.

Robinson"). The state arrest warrant alleged that Mr. Robinson committed an aggravated assault in violation of Georgia Code Annotated 16-5-21, a state crime. Mr. Robinson was not charged with any federal crime, and there was not a federal arrest warrant pending for Mr. Robinson.

6. Based upon several "Memorand[a] of Understanding" (hereinafter "MOUs") between the United States Marshals Service (a component of DOJ) and local municipal law enforcement agencies, the local municipal officers executing the state arrest warrant purported to be members of a federal task force. (See Exhibit "A"). However, Plaintiff has not received any documentation showing that the officers were specifically instructed or permitted to conduct Mr. Robinson's arrest under the auspices of a federal task force. Moreover, pursuant to the evidence so far uncovered, the decision to conduct the arrest appears to have been initiated and directed by officers from the local agencies. Additionally, the MOUs specifically state that officers "will comply with their agencies' guidelines concerning the use of firearms [and] deadly force … ." (See Exhibit "A").

7. At the time of the execution of the state arrest warrant, Jamarion Robinson was a 26-year-old male student and football player at Clark Atlanta University, who was in the process of transferring to Tuskegee University in

Alabama as a student-athlete. With the exception of a traffic violation, Mr. Robinson had no criminal convictions.

8. Mr. Robinson had also been recently diagnosed as a schizophrenic. Prior to effectuating the state arrest warrant on Mr. Robinson, the officers involved in making the arrest were informed of Mr. Robinson's diagnosis. Despite this knowledge, there is no evidence that the officers took his condition into consideration when planning his capture.

9. Further, there is no evidence that the officers attempted to secure the peaceful surrender of Mr. Robinson. Although contact was made with Mr. Robinson's family within 48 hours of this incident, the officers made no effort to enlist their assistance in obtaining Mr. Robinson's peaceful surrender. Likewise, no efforts were made to engage the assistance of Mr. Robinson's friends in securing a non-violent outcome.

10. Additionally, the officers failed to secure a search warrant or seek consent from the third-party tenant to enter the apartment unit where officers believed Mr. Robinson to be located. Although the officers conducted over two hours of surveillance at the apartment complex, giving them ample time to secure

lawful entry, the officers failed to obtain a search warrant or to gain consent to enter the apartment.

11. Before entering the apartment, the officers also failed to positively determine that Mr. Robinson was inside. The officers did not enlist the help of the third-party tenant who was present inside the apartment within hours of the shooting and who left the apartment in full view of the officers while they were conducting surveillance. The officers failed to engage or communicate with the third-party tenant to gain consent to enter, to determine whether Mr. Robinson was indeed inside the apartment, to determine the mental state of Mr. Robinson, or to gain assistance in negotiating Mr. Robinson's peaceful surrender.

12. There is also no indication that there were exigent circumstances that would have permitted the officers to enter the apartment without consent or a search warrant. There was no evidence at the time that Mr. Robinson had a weapon or that he presented any threat to the officers from his location inside the apartment.

13. Nonetheless, the officers knocked down the door to the apartment and immediately commenced firing approximately 51 shots from outside into the apartment without any known provocation and with reckless disregard for the safety of anyone else in the apartment and surrounding apartment units.

14. The officers then entered the apartment and fired approximately 41 additional shots from weapons, including a 9mm submachine gun, a .40mm submachine gun, and a .40 Glock pistol.

15. The officers fired over 90 rounds into or inside the apartment. At the conclusion of the shooting, a firearm was located, which the officers claimed that Mr. Robinson fired at them three times.  However, when the firearm was recovered, it was damaged and inoperable.  Moreover, in an investigative report completed by Officer Steve Schreckengost, he did not state that the officers entered the premises because Mr. Robinson was shooting. Rather, Officer Schreckengost claims they entered to protect others inside the apartment from Mr. Robinson, although it was clear from their surveillance no one else was in the apartment.  (See Exhibit B).

16. The medical examiner recorded over 59 entry wounds into Mr. Robinson's body. Without the documents requested, described herein, there is a question as to whether Mr. Robinson's killing was justified.

17. In the years that have followed Mr. Robinson's death, the DOJ has steadfastly refused to produce records related to this homicide.

18. And the DOJ's recalcitrance is not due to a lack of effort. More than 600 days ago, Plaintiff first sought records, such as the personnel files and training materials of the officers responsible for Mr. Robinson's killing.

19. DOJ has denied the requests of the Office of Fulton County District Attorney—the one office responsible for the investigation and prosecution of state crimes committed in Fulton County.

20. Plaintiff has attempted, multiple times, to modify its requests and work with the DOJ to obtain these materials. The DOJ has steadfastly blocked Plaintiff from conducting its work.

21. Faced with repeated opposition, Plaintiff submitted a FOIA request for records. Plaintiff's first request was made on September 6, 2018—more than 100 days ago. At that time, Plaintiff requested materials related to the U.S. Marshals Service Southeast Regional Task Force ("SERTF") Standard Operating Procedures ("SOPs"), directives, rules, or procedures. (See Exhibit C).

22. This FOIA request, submission ID 24746, requested "any and all records concerning the U.S. Marshals Service Southeast Regional Task Force Standard Operating Procedures, Directives, rules, or procedures." This request also identified fourteen specific topics relevant to Plaintiff's inquiry.

23. Two weeks later, on September 21, 2018, Plaintiff filed another FOIA request seeking additional federal policies. (See Exhibit D). This request, submission ID 27046, sought copies of US Marshal Form 122, a required form that all employees must complete following an officer-involved shooting.

24. Since those requests were made, Plaintiff has followed-up with repeated phone calls to the DOJ to resolve this dispute amicably. Plaintiff has been met with resistance at each step. Several of Plaintiff's calls have been unreturned, and, during the few returned phone calls, the DOJ has failed to provide any meaningful response to the status of this request.

25. The FOIA requests were narrowly-tailored and sought specific documents highly relevant to the death of Mr. Robinson.

26. It has now been 875 days since the officers killed Mr. Robinson, and the DOJ has yet to provide any of the documents or evidence requested and has failed to provide any investigative reports relating to Mr. Robinson's death.

### COUNT 1 (Violation of FOIA, 5 U.S.C. § 552)

27. Plaintiff realleges paragraphs 1 through 16 as if fully stated herein.

28. Defendant is unlawfully withholding records requested by Plaintiff pursuant to 5 U.S.C. § 552.

29. Plaintiff and the people of Fulton County, Georgia are irreparably harmed by Defendant's unlawful withholding of records responsive to Plaintiff's FOIA request, because, without the requested information, Plaintiff is unable to fulfill its duty to the community to enforce the laws of Georgia against these officers, and Plaintiff and the people of Fulton County will continue to be irreparably harmed unless Defendant is compelled to conform its conduct to the requirements of the law.

WHEREFORE, Plaintiff Office of the Fulton County District Attorney respectfully requests that the Court: (1) order Defendant Department of Justice to conduct searches for any and all responsive records to Plaintiff's FOIA requests and demonstrate that it employed search methods reasonably likely to lead to the discovery of records responsive to Plaintiff's FOIA request; (2) order Defendant to produce, by a date certain, any and all non-exempt records to Plaintiff's FOIA request and a Vaughn index of any responsive records withheld under claim of exemption; (3) enjoin Defendant from continuing to withhold any and all non-exempt records responsive to Plaintiff's FOIA request; (4) grant Plaintiff an award of attorneys' fees and other litigation costs reasonably incurred in this action pursuant to 5 U.S.C. § 552(a)(4)(E); and (5) grant Plaintiff such other relief as the Court deems just and proper.

Dated: December 27, 2018                      Respectfully submitted,

/s/ Lyndsey Rudder
Lyndsey Rudder
Georgia Bar No. 421055
Deputy District Attorney
Office of the Fulton County District Attorney
136 Pryor Street, SW, Third Floor
Atlanta, Georgia 30303
Phone: 404.612.4972
Fax:    404.332.0397
lyndsey.rudder@fultoncountyga.gov

/s/ A. Lee Bentley, III
A. Lee Bentley, III
Florida Bar No. 1002269
Bradley Arant Boult Cummings LLP
100 N. Tampa Street, Suite 2200
Tampa, Florida 33602
Phone: 813.559.5500
lbentley@bradley.com
*Pro hac vice (application to be filed)*

/s/ Jason Paul Mehta
Jason Paul Mehta
Florida Bar No. 106110
Bradley Arant Boult Cummings LLP
100 N. Tampa Street, Suite 2200
Tampa, Florida 33602
Phone: 813.559.5500
jmehta@bradley.com
*Pro hac vice (application to be filed)*

Counsel for Plaintiff

## **CERTIFICATE OF COMPLIANCE WITH LR 5.1**

I hereby certify that the foregoing document is written in 14 point Times New Roman font in accordance with Local Rule 5.1.

/s/ Lyndsey Rudder
Lyndsey Rudder

4812-3894-2340.1