# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

Office of the Fulton County District Attorney,

Plaintiff,

v.

United States Department of Justice, an Agency of the United States,

Defendant.

Case No. 1:18-cv-05902

Michael L. Brown
United States District Judge

________________________________/

## ORDER

Plaintiff Office of the Fulton County District Attorney sued Defendant United States Department of Justice, seeking records and attorneys' fees under the Freedom of Information Act ("FOIA"). Defendant now moves for summary judgment. (Dkt. 26.) The Court grants Defendant's motion in part and denies it in part.

# I. Background

## A. Plaintiff's FOIA Requests

In August 2016, the U.S. Marshals Service ("USMS") Southeast Regional Fugitive Task Force ("SERFTF") shot and killed Jamarian Robinson. (Dkt. 30-2 ¶¶ 3–4.) The shooting occurred in Fulton County. (*Id.* ¶ 3.) Plaintiff is investigating the incident. (*Id.* ¶¶ 3, 5.) It has submitted three FOIA requests to Defendant as part of that investigation. (*Id.* ¶¶ 3, 5; Dkt. 27 ¶¶ 3–4, 27.)

Plaintiff submitted two of these requests in September 2018. (Dkt. 27 ¶¶ 3–4.) The first sought "all records concerning [SERFTF's] Standard Operating Procedures (SOPs), Directives, rules, or procedures regarding" fourteen specific topics. (*Id.* ¶ 33.) The second sought a USMS Use of Force Report about the Robinson shooting. (*Id.* ¶¶ 75–76.) Defendant concluded it could not process and respond to these requests within its usual 60-day window due to the volume of records sought. (*Id.* ¶¶ 14, 18.) As a result, on December 22, 2018, Defendant asked Plaintiff if it was willing to narrow the requests. (*Id.* ¶ 19.) Plaintiff said no. (*Id.* ¶ 20.)

Five days later, Plaintiff filed this lawsuit claiming Defendant "has yet to provide any of the documents or evidence requested" in violation of the FOIA. (Dkt. 1 ¶¶ 26, 28.) On February 4, 2019, Plaintiff submitted its third FOIA request, this time seeking "all internal investigative documents and reports, as well as recorded interviews, either reviewed or prepared by the Department of Justice pertaining to [the Robinson shooting]." (Dkts. 27 ¶¶ 116–117; 27-1 at 42.) On March 12, 2019, Plaintiff amended its complaint by adding a claim that Defendant failed to comply with the third FOIA request. (Dkts. 13; 27 ¶ 28.) Plaintiff's amended complaint — which remains the operative pleading in this case — asks the Court to compel production of all non-exempt records responsive to Plaintiff's three FOIA requests. (Dkt. 13 at 6.) It also seeks attorneys' fees and litigation costs. (*Id.*) Defendant began responding to Plaintiff's FOIA requests just a few days after Plaintiff amended its complaint.

**B. Defendant's Response to Plaintiff's First FOIA Request**

In response to Plaintiff's first FOIA request, Defendant produced 89 pages on March 18, 2019, and another 55 pages over the next few months. (Dkt. 27 ¶¶ 53, 59, 62.) It is undisputed (1) that Defendant's

document search was complete and thorough, and (2) that Defendant has now produced all documents responsive to Plaintiff's first FOIA request. (*See id.* ¶¶ 64–66; Dkt. 30-1 ¶¶ 64–66.)

### C. Defendant's Response to Plaintiff's Second FOIA Request

On March 15, 2019, Defendant produced a redacted version of the Use of Force Report in response to Plaintiff's second FOIA request. (Dkt. 27 ¶ 92.) In June 2019, Defendant told Plaintiff it located another page of the report but that it was exempt from disclosure under FOIA Exemption 7(A) because its production "could reasonably be expected to interfere with enforcement proceedings." (*Id.* ¶¶ 104–05; Dkt. 27-1 at 63); 5 U.S.C. § 552(b)(7)(A). In August 2019, Defendant produced the extra page to Plaintiff in response to a separate document request (known as a *Touhy* request) governed by different regulations (known as *Touhy* regulations). (Dkt. 27 ¶ 106).[1]

---

[1] Defendant's "*Touhy* regulations[] are codified at 28 C.F.R. §§ 16.21–16.27 and provide procedures to respond to demands for 'production or disclosure' of information for state and federal court proceedings." *Benhoff v. U.S. Dep't of Justice*, 2016 WL 6962859, at *3 n.5 (S.D. Cal. Nov. 29, 2016). "FOIA requests are different and distinct from *Touhy* requests and both are governed by two separate standards, regulations and procedures." *Id.* at 3.

About a month later, Defendant issued a "supplemental response" to Plaintiff's second FOIA request. (Dkt. 27-1 at 67.) The response said:

> By letter dated June 6, 2019, the USMS . . . advis[ed] you that this office had conducted a search and located additional material, consisting of 1 page . . . . At the time, this office determined that the page was exempt from disclosure pursuant to FOIA Exemption 7(A). The USMS has since determined that this page may be released to you in full. The USMS sent this page to your office on August 16, 2019 . . . in response to a *Touhy* request for documents submitted by your office. Enclosed please find a *Vaughn* Index for this document.

(*Id.*)[2] The enclosed *Vaughn* Index said the page was "Released in Full" and that no "FOIA Exemption" applied. (*Id.* at 69.)

It is undisputed that (1) Defendant's search for documents responsive to Plaintiff's second FOIA request was complete and thorough, and (2) Defendant has now produced all documents responsive to that request. (*See* Dkts. 27 ¶¶ 112–114; 30-1 ¶¶ 112–114.)

---

[2] A *Vaughn* Index "usually consists of a listing of each withheld document, or portion thereof, indicating the specific FOIA exemption applicable and the specific agency justification for the non-disclosure." *Miccosukee Tribe of Indians of Fla. v. United States*, 516 F.3d 1235, 1260 (11th Cir. 2008).

### D. Defendant's Response to Plaintiff's Third FOIA Request

Defendant responded to Plaintiff's third FOIA request in June 2019. (Dkt. 27 ¶ 130.) It said all responsive documents were exempt from disclosure under FOIA Exemption 7(A) because their production "could reasonably be expected to interfere with enforcement proceedings." (*Id.*); 5 U.S.C. § 552(b)(7)(A). Just two months later, however, Defendant produced these documents to Plaintiff in response to a *Touhy* request. (Dkt. 27 ¶ 133.)

In September 2019, Defendant issued a "supplemental response" to Plaintiff's third FOIA request. (Dkt. 27-1 at 74.) The response said:

> [T]his office [previously] determined that all records were exempt from disclosure pursuant to FOIA Exemption 7(A). The USMS has since determined that of the 46 pages of responsive records, 22 pages are appropriate for release in full and 24 pages are appropriate for release in part pursuant to FOIA Exemptions 6, 7(C), 7(E), and/or 7(F). The USMS sent this material to your office on August 16, 2019 . . . in response to a *Touhy* request for documents submitted by your office. Enclosed please find a *Vaughn* Index for those documents.

(*Id.*) The *Vaughn* Index stated that 5 documents were "Released in Full" and that 14 documents' pages were "Released in Part" because "FOIA Exemption[s]" applied. (*Id.* at 76–79.) The index also identified and justified the exemptions applicable to each redacted document. (*Id.*)

It is undisputed that Defendant's search for documents responsive to Plaintiff's third FOIA request was complete and thorough. It is also undisputed that Defendant has now produced all documents responsive to that request *except that* Plaintiff claims Defendant improperly redacted (and thus withheld) certain names in the documents. (*See* Dkts. 27 ¶¶ 141–143; 30-1 ¶¶ 141–143.)

**E. Defendant's Summary Judgment Motion**

Defendant moved for summary judgment in January 2020. (Dkt. 26.) It claims Plaintiff's substantive FOIA claims are moot because it has adequately searched for and produced all non-exempt documents responsive to the three requests. (*Id.* at 7.) Plaintiff opposes this argument in only one respect: it says Defendant is still improperly withholding (via redactions) the names of third parties who complained to the USMS Office of Professional Responsibility ("OPR") about the Robinson shooting. (Dkt. 30 at 10–14.) Defendant also seeks summary judgment on Plaintiff's claim for attorneys' fees under FOIA. Plaintiff opposes that request in full.

## II. Plaintiff's Substantive FOIA Claims

### A. Legal Standard

There is only one substantive FOIA issue that remains pending in this case: whether Defendant must disclose the names of third parties who complained to OPR about the Robinson shooting or whether Defendant properly redacted those names under FOIA Exemptions 6 and 7(C). (*See* Dkt. 27-1 at 77–78.)[3]

FOIA Exemption 6 protects from disclosure any "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6). "The phrase 'similar files' has a broad meaning and includes any detailed Government records on an individual that can be identified as applying

[3] Plaintiff's other substantive FOIA claims are moot because they seek documents that Plaintiff has now received. *See Von Grabe v. U.S. Dep't of Homeland Sec.*, 440 F. App'x 687, 688 (11th Cir. 2011) ("If a person receives all the information he has requested under FOIA, even if the information was delivered late, his FOIA claim is moot to the extent that such information was sought."); *Brown v. U.S. Dep't of Justice*, 169 F. App'x 537, 540 (11th Cir. 2006) ("[A]s Brown has received the documents, the issue has become moot and Brown is not entitled to injunctive relief under the FOIA."); *Lovell v. Alderete*, 630 F.2d 428, 430–31 (5th Cir. 1980) ("Lovell's [FOIA] suits were mooted by the production of the requested documents," "[e]ven though the information he sought . . . was delivered late").

to that individual." *Scott v. Treasury Inspector Gen. for Tax Admin.*, 787 F. App'x 642, 644 (11th Cir. 2019). FOIA Exemption 7(C) protects from disclosure any "records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information . . . could reasonably be expected to constitute an unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(7)(C).

To determine whether a privacy invasion is "unwarranted" under these exemptions, "the Court [must] balance the individual's right of privacy against the basic policy of opening agency action to the light of public scrutiny." *Office of Capital Collateral Counsel, N. Region of Fla. ex rel. Mordenti v. Dep't of Justice*, 331 F.3d 799, 802 (11th Cir. 2003). "The privacy interest protected by [the exemptions] includes an individual's interest in avoiding disclosure of personal matters." *Id.* "The relevant public interest to be balanced against the private interests at stake is the core purpose of FOIA: to open agency action to the light of public scrutiny." *Id.* at 803. "Any peculiar interest of the requesting party is irrelevant to evaluating this general public interest." *Id.*

"[A]n agency has the burden of proving that it properly invoked any FOIA exemptions when it decided to withhold information." *Miccosukee Tribe*, 516 F.3d at 1258. But when "privacy concerns . . . are present," as they are under Exemptions 6 and 7(C), "the citizen must show that the public interest sought to be advanced is a significant one" and that "the information is likely to advance that interest." *Nat'l Archives & Records Admin. v. Favish*, 541 U.S. 157, 172 (2004).

**B. Discussion**

OPR has received at least three third-party complaints about the Robinson shooting. (Dkt. 27-1 at 77–78). Defendant produced these complaints in response to Plaintiff's third FOIA request. (*Id.*) But it redacted the names of the complainants pursuant to FOIA Exemptions 6 and 7(C). (*Id.*). Defendant submitted a *Vaughn* Index saying disclosure of these names "could subject [the complainants] to public scrutiny and possible harassment for being associated with a law enforcement matter." (*Id.*) Plaintiff now claims the redactions are unwarranted because the public interest in disclosure outweighs the complainants' interest in keeping their names private. (Dkt. 30 at 13.) The Court disagrees.

"[T]he only relevant public interest in the FOIA balancing analysis [is] the extent to which disclosure of the information sought would shed light on an agency's performance of its statutory duties or otherwise let citizens know what their government is up to." *U.S. Dep't of Def. v. Fed. Labor Relations Auth.*, 510 U.S. 487, 497 (1994). Defendant significantly advanced that interest by releasing the substance of the third-party complaints. It is unclear how releasing the *names* of the complainants would do the same or otherwise add much to what is already known about Defendant's role in the shooting. *See U.S. Dep't of State v. Ray*, 502 U.S. 164, 175 (1991) ("[D]isclosure of the contents of the interviews with the Haitian returnees adequately served [FOIA's] statutory purpose and . . . the release of the information identifying the particular interviewees would constitute a clearly unwarranted invasion of their privacy."); *Mordenti*, 331 F.3d at 804 ("There is already substantial information available to the public about [the events]. The public interest in knowing [about the events] can be satisfied by this other public information.").

Plaintiff says it "intends to use [the names] to investigate whether the use of force employed against Robinson was justified, or whether possible murder or aggravated assault charges are appropriate." (Dkt. 30

at 12.) But "a court should disregard the intentions of the requestor when considering the public interest in a FOIA disclosure." *Sherman v. U.S. Dep't of Army*, 244 F.3d 357, 362 (5th Cir. 2001); *see U.S. Dep't of Def.*, 510 U.S. at 496 ("[W]hether an invasion of privacy is warranted cannot turn on the purposes for which the request for information is made."); *Reed v. N.L.R.B.*, 927 F.2d 1249, 1252 (D.C. Cir. 1991) (finding it "irrelevant under FOIA" that the requester "plan[ned] to use the [records] to correct allegedly widespread misrepresentations"). Nor is it relevant that Plaintiff, given its law enforcement function, is uniquely able to use the complainants' names to accomplish a public good. *See U.S. Dep't of Def.*, 510 U.S. 487 at 496 ("[T]he identity of the requesting party has no bearing on the merits of his or her FOIA request.").[4]

---

[4] To the extent Plaintiff wants the complainants' names so it can independently contact them "to obtain additional information outside the Government files," it is unclear whether this "derivative use of requested documents" can sustain a FOIA-related public interest. *Ray*, 502 U.S. at 178–79; *see Kuzma v. U.S. Dep't of Justice*, 692 F. App'x 30, 35 (2d Cir. 2017) ("To the extent Kuzma means that learning the identities [of individuals involved in an investigation] will provide further avenues for research, we have observed that courts have been skeptical of recognizing a public interest in this 'derivative' use of information."). But even if it can, "there is nothing in the record to suggest that" the complainants here have "any relevant information that is not set forth in the documents that have already been produced." *Ray*, 502 U.S. at 179. Nor is there any

The bottom line is that releasing the complainants' names "would not appreciably further the citizens' right to be informed about what their government is up to." *Id.* at 497; *see Kuzma*, 692 F. App'x at 35 ("Kuzma does not explain how knowing the names of the individuals involved in the investigation will further illuminate the FBI's activities. His assertion, without evidence, that this particular information will reveal fault in the government's handling of the Robinson case is not enough."); *Balderrama v. U.S. Dep't of Homeland Sec.*, 2006 WL 889778, at *9 (D.D.C. Mar. 30, 2006) ("[I]t is unlikely that releasing this information—identifying specific third parties and individuals—to the public would serve FOIA's underlying purpose of allowing the public to better understand how agencies function."). And because that is the only public interest that counts in the FOIA analysis, the public interest in disclosure is necessarily limited here.

---

evidence "that tends to impugn the integrity" of those produced documents. *Id.* Moreover, "the likelihood that [Plaintiff] would use the requested identifying information to contact [the complainants] dramatically increases the already significant threat to [their] privacy interests that disclosure of this information would entail." *Hopkins v. U.S. Dep't of Hous. & Urban Dev.*, 929 F.2d 81, 88 (2d Cir. 1991).

This limited public interest stands in contrast to the significant privacy interest in *non*disclosure. Courts "have consistently supported nondisclosure of names or other information identifying individuals appearing in law enforcement records, including investigators, suspects, witnesses, and informants." *Schrecker v. U.S. Dep't of Justice*, 349 F.3d 657, 661 (D.C. Cir. 2003). That approach is especially sensible here because the OPR's investigation into the Robinson shooting remains open and active. (Dkt. 27 ¶¶ 111, 140.) "[T]here is a significant interest in maintaining the secrecy of the identity of witnesses and third party [complainants] so that law enforcement can continue to gather information through these [individuals] while assuring that [they] will not be subject to harassment or reprisal." *Clemmons v. U.S. Army Crime Records Ctr.*, 2007 WL 1020827, at *6 (D.D.C. Mar. 30, 2007); *see Balderrama*, 2006 WL 889778, at *9 ("[I]ndividuals whose identities have been protected—witnesses, undercover officers, informants—maintain a substantial privacy interest in not being identified with law enforcement proceedings. They could be subjected to harassment and retaliation.").

Given the undisputed facts here, the Court finds as a matter of law that the complainants' privacy interest in protecting their names from

disclosure substantially outweighs any cognizable public interest in disclosure. This means Defendant properly redacted the complainants' names under FOIA Exemptions 6 and 7(C).[5] Because Plaintiff does not claim Defendant is withholding any other records responsive to its three FOIA requests, Defendant is entitled to summary judgment on Plaintiff's substantive FOIA claims. *See Miscavige v. I.R.S.*, 2 F.3d 366, 369 (11th Cir. 1993) ("Generally, FOIA cases should be handled on motions for summary judgment.").

## III. Plaintiff's Request for Attorneys' Fees

### A. Legal Standard

Defendant also moves for summary judgment on Plaintiff's request for attorneys' fees. One might think Plaintiff's fee request is doomed because the Court has already dismissed Plaintiff's substantive claims as moot or, in one instance, meritless. But that is not the case. "[W]hen a plaintiff seeks information under FOIA and associated attorney fees, courts retain equitable jurisdiction to adjudicate the fee claim after the

[5] Exemptions 6 and 7(C) contain other requirements — the former applies only to "personnel and medical files and similar files"; the latter applies only to records "compiled for law enforcement purposes" — but Plaintiff does not dispute these requirements are met here.

defendant produces the requested information and thus renders the FOIA claim moot." *Pakovich v. Verizon LTD Plan*, 653 F.3d 488, 493 (7th Cir. 2011); *see Von Grabe*, 440 F. App'x at 688 ("A claim's mootness . . . does not automatically preclude an award of damages or attorney's fees."); *Lovell*, 630 F.2d at 431 ("Even though Lovell's [FOIA] suits were mooted by the production of the requested documents, mootness does not automatically preclude an award of attorney's fees."). Plaintiff's request for attorneys' fees thus remains at least potentially viable here.

The FOIA's fee provision states: "The court may assess against the United States reasonable attorney fees and other litigation costs reasonably incurred in any case under [the FOIA] in which the complainant has substantially prevailed." 5 U.S.C. § 552(a)(4)(E)(i). "This language naturally divides the attorney-fee inquiry into two prongs:" "fee eligibility and fee entitlement." *Brayton v. Office of the U.S. Trade Representative*, 641 F.3d 521, 524 (D.C. Cir. 2011); *see Siegelman v. U.S. Dep't of Justice*, 2019 WL 1513979, at *2 (N.D. Ala. Apr. 8, 2019) ("If a court determines that a claimant is eligible for an award of attorneys' fees, then the court must decide whether the claimant is entitled to such an award."). "The eligibility prong asks whether a

plaintiff has 'substantially prevailed' and thus 'may' receive fees." *Brayton*, 641 F.3d at 524 (quoting 5 U.S.C. § 552(a)(4)(E)(i)). "If so, the court proceeds to the entitlement prong and considers a variety of factors to determine whether the plaintiff *should* receive fees." *Id.*

## B. Whether Plaintiff is Eligible for Attorneys' Fees

A plaintiff is eligible for attorneys' fees if he "substantially prevailed" in a FOIA case. 5 U.S.C. § 552(a)(4)(E)(i). In 2007, Congress amended the FOIA by adding a statutory definition of "substantially prevailed." *Von Grabe*, 440 F. App'x at 688. That definition says a plaintiff "substantially prevailed" if he "obtained relief through either (I) a judicial order, or an enforceable written agreement or consent decree; or (II) a voluntary or unilateral change in position by the agency, if the complainant's claim is not insubstantial." 5 U.S.C. § 552(a)(4)(E)(ii). Plaintiff has not obtained any relief through a judicial order or settlement, so only the second ground could apply here.

That ground includes three requirements. First, the plaintiff must have "obtained relief." This means he "must have received from the agency some of the information []he was suing for." *First Amendment Coal. v. U.S. Dep't of Justice*, 878 F.3d 1119, 1131 (9th Cir. 2017) (Berzon,

J. concurring). Second, the relief must have been obtained through "a voluntary or unilateral change" in the agency's position. "This element contemplates the willing disclosure of information to the complainant by an agency, in contrast to one brought about by 'judicial order' or 'enforceable written agreement or consent decree,' as envisioned in subsection (I)." *Id.* Third, Plaintiff's FOIA claim must be "not insubstantial." This "bears on whether the claim has or may have merit," though it does not "demand[] an actually meritorious" claim." *Id.* at 1131–32, 1138. It is "a pretty low standard" that is "very generous to FOIA requesters." *Id.* at 1135.

As the movant for summary judgment, it is Defendant's burden to show that these requirements cannot be met here as a matter of law. *See Boyle v. City of Pell City*, 866 F.3d 1280, 1288 (11th Cir. 2017) ("Summary judgment is appropriate when the movant demonstrates that there is no genuine issue of material fact and it is entitled to judgment as a matter of law."). Defendant has not met that burden. Nor has it really tried to do so.[6] Defendant instead assumes "[P]laintiff must show that the

[6] Defendant belatedly addresses the three requirements in its reply brief but, even then, it does so only superficially — and unconvincingly.

change in the agency's position would not have occurred *but for* the filing of the lawsuit[]" — and then spends several pages arguing Plaintiff "cannot make this threshold showing." (Dkt. 26 at 19.)

But "the text of [FOIA's] fee provision . . . plainly does not require a causal nexus between the litigation and the agency's disclosure." *First Amendment*, 878 F.3d at 1130 (Berzon, J. concurring); *see Grand Canyon Tr. v. Bernhardt*, 947 F.3d 94, 100 (D.C. Cir. 2020) (Randolph, J. concurring) ("The statute . . . does not require a plaintiff to show a causal connection between its lawsuit and the government's capitulation."); *Sai v. Transp. Sec. Admin.*, 155 F. Supp. 3d 1, 6 n.4 (D.D.C. 2016) ("[U]nder the literal terms of the statute, a plaintiff need show only that the agency has changed its position and that the plaintiff's claim was 'not insubstantial.'"). So even if Defendant is right that it did not produce the requested records *because* of this lawsuit, that tells us nothing about

---

Perhaps no convincing argument *can* be made. After all, (1) Defendant failed to produce any of the requested records before this lawsuit, (2) it produced virtually all of them (and dropped several alleged exemptions) during the pendency of this suit, and (3) it did so without any "judicial order, . . . enforceable written agreement or consent decree." If Plaintiff moves for attorneys' fees, Defendant likely faces an uphill battle in opposing them.

whether Plaintiff is eligible for attorneys' fees under FOIA. Given the Defendant's misdirected arguments, it has not shown Plaintiff is ineligible for attorneys' fees as a matter of law.[7]

### C. Whether Plaintiff is Entitled to Attorneys' Fees

"Once a plaintiff has substantially prevailed and thus become *eligible* for an award of attorney's fees, a court should determine whether the plaintiff is *entitled* to the award." *Lovell*, 630 F.2d at 431 (emphasis added). The court should make this determination based on at least four criteria: "(1) The benefit to the public deriving from the case; (2) the commercial benefit to the complainant; (3) the nature of the complainant's interest in the records sought; and (4) whether the government's withholding of the records sought had a reasonable basis

[7] It is true that some courts have read a causation requirement into FOIA's fee provision. *See First Amendment*, 878 F.3d at 1133 (collecting cases and noting that "none of those opinions did business with the language of the statute, or explained why the courts should add to the statute a requirement that is simply not in the text"). But the Eleventh Circuit has not yet done so. And, until it does, this Court must follow the plain language of the statute. *See Jimenez v. Quarterman*, 555 U.S. 113, 118 (2009) ("It is well established that, when the statutory language is plain, we must enforce it according to its terms."); *see also Milner v. Dep't of Navy*, 562 U.S. 562, 576 (2011) ("[W]e have no warrant to ignore clear statutory language on the ground that other courts have done so.").

in law." *Id.* at 431–32. "[T]he court may consider any relevant equitable factors that may affect its balancing of the criteria above." *Id.* at 432.

Defendant's motion addresses only the fourth factor. (*See* Dkts. 26 at 23–25; 40 at 13–15.) That is insufficient because binding precedent requires the Court to "determine whether the plaintiff is entitled to the award in light of [all four] criteria." *Lovell*, 630 F.2d at 431; *see Blue v. Bureau of Prisons*, 570 F.2d 529, 534 (5th Cir. 1978) ("it was an abuse of discretion to neglect . . . three criteria entirely in determining to award no attorneys' fees to the petitioner" because "all four criteria are to be weighed as guides to the court's discretion in FOIA attorneys' fees awards").[8] The Court thus denies Defendant's motion for summary judgment on Plaintiff's request for attorneys' fees.

Assuming Plaintiff still seeks attorneys' fees and costs, it should meet and confer with Defendant in a good faith effort to resolve that claim (or at least narrow the issues in dispute). If the parties are unable to reach a resolution, Plaintiff may file a motion for attorneys' fees and costs

---

[8] *See also Siegelman*, 2019 WL 1513979, at *5 ("the Court must consider" all four factors); *Mendez-Suarez v. Veles*, 698 F. Supp. 905, 908 (N.D. Ga. 1988) ("[T]he government's basis for failing to release documents is only one of many equitable factors that the Court may consider.").

on or before September 1, 2020. *See, e.g.*, *Lobosco v. I.R.S.*, 1981 WL 1780, at *6 (E.D.N.Y. Jan. 14, 1981) (denying defendant's motion for summary judgment "with respect to plaintiffs' request for attorney fees" and ordering plaintiffs to "file any application for attorney fees which it intends to make").

## IV. Conclusion

Defendant's Motion for Summary Judgment (Dkt. 26) is **GRANTED IN PART** and **DENIED IN PART**. It is **GRANTED** to the extent it seeks summary judgment on Plaintiff's substantive FOIA claims for documents. It is **DENIED** to the extent it seeks summary judgment on Plaintiff's request for attorneys' fees and costs.

The Court **ORDERS** the parties to meet and confer in a good faith effort to resolve Plaintiff's request for attorneys' fees and costs. If the parties are unable to reach a resolution, Plaintiff may file a motion for attorneys' fees and costs on or before September 1, 2020.

**SO ORDERED** this 14th day of July, 2020.

MICHAEL L. BROWN
UNITED STATES DISTRICT JUDGE