**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

Office of the Fulton County
District Attorney,

                              Case No. 1:18-cv-5902-MLB

                Plaintiff,

v.

United States Department of
Justice,

                Defendant.

_____/

## <u>OPINION & ORDER</u>

Plaintiff moves for attorneys' fees under the Freedom of Information Act ("FOIA"). (Dkt. 52.) The Court grants Plaintiff's motion.

## I.   Background

In August 2016, the U.S. Marshals Service ("USMS") Southeast Regional Fugitive Task Force ("SERFTF") shot and killed Jamarian Robinson. (Dkt. 30-2 ¶¶ 3–4.) The shooting occurred in Fulton County. (*Id.* ¶ 3.) Plaintiff is investigating the incident. (*Id.* ¶¶ 3, 5.) It has submitted three FOIA requests to Defendant as part of that investigation. (*Id.* ¶¶ 3, 5; Dkt. 27 ¶¶ 3–4, 27.)

Plaintiff submitted two of the requests in September 2018. (Dkt. 27 ¶¶ 3–4.) The first sought "all records concerning [SERFTF's] Standard Operating Procedures (SOPs), Directives, rules, or procedures regarding" fourteen topics. (*Id.* ¶ 33.) The second sought a USMS Use of Force Report about the Robinson shooting. (*Id.* ¶¶ 75–76.) Defendant concluded it could not respond to the requests within its usual 60-day window because of the volume of records sought. (*Id.* ¶¶ 14, 18.) As a result, on December 22, 2018, Defendant asked Plaintiff if it was willing to narrow the requests. (*Id.* ¶ 19.) Plaintiff said no. (*Id.* ¶ 20.)

Five days later, Plaintiff sued claiming Defendant "has yet to provide any of the documents or evidence requested" in violation of the FOIA. (Dkt. 1 ¶¶ 26, 28.) On February 4, 2019, Plaintiff submitted its third FOIA request, this time seeking "all internal investigative documents and reports, as well as recorded interviews, either reviewed or prepared by the Department of Justice pertaining to [the Robinson shooting]." (Dkts. 27 ¶¶ 116–117; 27-1 at 42.) On March 12, 2019, Plaintiff amended its complaint by adding a claim that Defendant failed to comply with the third FOIA request. (Dkts. 13; 27 ¶ 28.) Plaintiff's amended complaint—which remains the operative pleading in this

case—asks the Court to compel production of all non-exempt records responsive to Plaintiff's three FOIA requests. (Dkt. 13 at 6.) It also seeks attorneys' fees and litigation costs. (*Id.*)

After Plaintiff amended its complaint, Defendant produced documents responsive to Plaintiff's first FOIA request. (*See* Dkt. 27 ¶¶ 53, 59, 62, 64–66.) But it refused to produce the single document Plaintiff sought in its second request or any documents responsive to Plaintiff's third request (together, "7(A) Records"). (Dkts. 27 ¶¶ 104, 130; 27-1 at 63, 71.) Defendant said these records were exempt from disclosure under FOIA Exemption 7(A) because their production "could reasonably be expected to interfere with enforcement proceedings." 5 U.S.C. § 552(b)(7)(A).

In August 2019, Defendant produced the 7(A) Records to Plaintiff in response to a separate document request (known as a *Touhy* request) governed by different regulations (known as *Touhy* regulations). (Dkt. 27 ¶¶ 106, 133).[1] About a month later, Defendant also "released" the

---

[1] Defendant's "*Touhy* regulations[] are codified at 28 C.F.R. §§ 16.21–16.27 and provide procedures to respond to demands for 'production or disclosure' of information for state and federal court proceedings." *Benhoff v. U.S. Dep't of Justice*, 2016 WL 6962859, at *3 n.5 (S.D. Cal.

7(A) Records in response to Plaintiff's FOIA requests (meaning Defendant withdrew its assertion of Exemption 7(A)). (Dkt. 27-1 at 67–69, 74–79.)

In July 2020, the Court granted Defendant's motion for summary judgment on the three document requests, finding Defendant had produced everything to which Plaintiff was entitled. (Dkt. 46.) But the Court denied summary judgment on Plaintiff's request for attorneys' fees. (*Id.*) Plaintiff now moves to recover those fees. (Dkt. 52.) Defendant opposes Plaintiff's motion. (Dkt. 57.)

## II.   Legal Standard[2]

"[W]hen a plaintiff seeks information under FOIA and associated attorney fees, courts retain equitable jurisdiction to adjudicate the fee claim after the defendant produces the requested information and thus renders the FOIA claim moot." *Pakovich v. Verizon LTD Plan*, 653 F.3d

---

Nov. 29, 2016). "FOIA requests are different and distinct from *Touhy* requests and both are governed by two separate standards, regulations and procedures." *Id.* at 3.

[2] The Court's opinion, and the parties' submissions, rely on several cases from the D.C. Circuit. That is because "the majority of the caselaw interpreting FOIA has been decided by the D.C. Circuit." *Miccosukee Tribe of Indians of Fla. v. United States*, 516 F.3d 1235, 1258 n.23 (11th Cir. 2008).

488, 493 (7th Cir. 2011); *see Lovell v. Alderete*, 630 F.2d 428, 431 (5th Cir. 1980) ("Even though Lovell's [FOIA] suits were mooted by the production of the requested documents, mootness does not automatically preclude an award of attorney's fees.").  So although Defendant has now complied with Plaintiff's document requests (and obtained summary judgment as a result), that does not doom Plaintiff's claim for fees.

The FOIA's fee provision states: "The court may assess against the United States reasonable attorney fees and other litigation costs reasonably incurred in any case under [the FOIA] in which the complainant has substantially prevailed."  5 U.S.C. § 552(a)(4)(E)(i). "This language naturally divides the attorney-fee inquiry into two prongs:" "fee eligibility and fee entitlement." *Brayton v. Office of the U.S. Trade Representative*, 641 F.3d 521, 524 (D.C. Cir. 2011); *see Siegelman v. U.S. Dep't of Justice*, 2019 WL 1513979, at *2 (N.D. Ala. Apr. 8, 2019) ("If a court determines that a claimant is eligible for an award of attorneys' fees, then the court must decide whether the claimant is entitled to such an award.").  "The eligibility prong asks whether a plaintiff has 'substantially prevailed' and thus 'may' receive fees." *Brayton*, 641 F.3d at 524 (quoting 5 U.S.C. § 552(a)(4)(E)(i)).  "If so, the

court proceeds to the entitlement prong and considers a variety of factors to determine whether the plaintiff *should* receive fees." *Id.* "[I]f a FOIA plaintiff is both eligible for and entitled to an award, courts assess the reasonableness of the requested fees." *Scott v. Internal Revenue Serv.*, 2021 WL 2882012, at *2 (S.D. Fla. July 9, 2021).

## III.   Discussion[3]

### A.     Plaintiff's Eligibility for Fees

A plaintiff is eligible for attorneys' fees if he "substantially prevailed" in a FOIA case.   5 U.S.C. § 552(a)(4)(E)(i).   This means [a

---

[3] The parties previously submitted substantial evidence at the summary judgment stage.  As a general matter, the Court declines to consider this evidence unless the parties specifically cite to it in their briefing on Plaintiff's motion for attorneys' fees.  *See Chavez v. Sec'y Fla. Dep't of Corr.*, 647 F.3d 1057, 1061 (11th Cir. 2011) ("[D]istrict court judges are not required to ferret out delectable facts buried in a massive record."); *Procaps S.A. v. Patheon Inc.*, 2014 WL 835785, at *1 (S.D. Fla. Mar. 4, 2014) ("[I]t is not a court's role to hunt through the record to uncover evidence that supports one party or the other.").  The Court also declines to consider the parties' summary judgment briefs.  We are now at a different stage of the case.  And we are dealing with a different motion. If the parties want the Court to consider an argument in connection with this new motion, they must present that argument in their supporting briefs.  They cannot simply "incorporate by reference" arguments made elsewhere.  *See Ameris Bank v. Lexington Ins. Co.*, 2016 WL 5496383, at *1 (S.D. Ga. Sept. 28, 2016) ("This Court does not accept piecemeal briefs that incorporate by reference arguments contained in other filings."); *Davis v. DeKalb Cty., Georgia*, 2005 WL 8154356, at *2 n.3 (N.D. Ga. May

6

plaintiff] must have "obtained relief through either (I) a judicial order, or an enforceable written agreement or consent decree; or (II) a voluntary or unilateral change in position by the agency, if the complainant's claim is not insubstantial."  5 U.S.C. § 552(a)(4)(E)(ii).  Plaintiff has obtained no relief through a judicial order or settlement, so only the second ground could apply here.

That ground includes three requirements.  First, the plaintiff must have "obtained relief."  This means he [or she] "must have received from the agency some of the information [he or she] was suing for."  *First Amendment Coal. v. U.S. Dep't of Justice*, 878 F.3d 1119, 1131 (9th Cir. 2017) (Berzon, J. concurring).  Second, the relief must have been obtained through "a voluntary or unilateral change" in the agency's position.  "This element contemplates the willing disclosure of information to the complainant by an agency, in contrast to one brought about by 'judicial order' or 'enforceable written agreement or consent decree.'"  *Id.*  Third,

_____

31, 2005) ("[I]ncorporation by reference of arguments made in other briefs . . . circumvents the page limitations imposed by the Local Rules of this district.").  And they cannot rely on the Court to sua sponte comb through prior briefs, pull out anything potentially relevant, and reapply it to the motion pending before the Court.  *See Chavez*, 647 F.3d at 1061 ("[J]udges are not like pigs, hunting for truffles buried in briefs.").

Plaintiff's FOIA claim must be "not insubstantial." This "bears on whether the claim has or may have merit," though it does not "demand[] an actually meritorious" claim." *Id.* at 1131–32, 1138. It is "a pretty low standard" that is "very generous to FOIA requesters." *Id.* at 1135.

The Court finds, and Defendant does not dispute, that the first two conditions are met here. Plaintiff "obtained relief" because it ultimately received the 7(A) Records it sought in this lawsuit. Plaintiff obtained this relief through a "voluntarily or unilateral change" in the agency's position because Defendant elected to disclose the 7(A) Records after first withholding them under Exemption 7(A). The only dispute is whether Plaintiff's claim for the 7(A) Records was "not insubstantial." Plaintiff says the claim was substantial because it involved "potentially meritorious requests for information." (Dkts. 52 at 8; 59 at 2–3.) Defendant says the claim was insubstantial because "[t]he law clearly supported the USMS' original decision to withhold the 7(A) Records under FOIA Exemption 7A." (Dkt. 57 at 4.) The Court agrees with Plaintiff.[4]

---

[4] Defendant also preserves for appeal its argument that Plaintiff must "show a causal nexus between the filing of its FOIA action and the USMS'

### 1.   Legal Principles

"The Freedom of Information Act requires a federal agency to disclose records requested by an individual." *Van Bilderbeek v. U.S. Dep't of Just.*, 416 F. App'x 9, 12 (11th Cir. 2011).  But "an agency may withhold documents that fall within one of nine statutory exemptions." *Id.*  Each exemption is "narrowly construed." *Dep't of Air Force v. Rose*, 425 U.S. 352, 361 (1976).  The agency bears the burden to show an exemption applies. *Van Bilderbeek*, 416 F. App'x at 12.

Exemption 7(A) allows an agency to withhold "records or information compiled for law enforcement purposes . . . to the extent that the production of such law enforcement records or information . . . could reasonably be expected to interfere with enforcement proceedings." 5 U.S.C.  §  552(b)(7)(A).   "[T]o withhold documents pursuant to Exemption 7(A), an agency must show that they were compiled for law enforcement purposes and that their disclosure (1) could reasonably be expected to interfere with (2) enforcement proceedings that are

---

voluntary production of the 7(A) Records in order to show that it substantially prevailed on its FOIA claim." (Dkt. 57 at 3 n.1.)  The Court previously rejected that argument at summary judgment. (Dkt. 46 at 17–20 & n.7.)

(3) pending or reasonably anticipated." *Mapother v. Dep't of Just.*, 3 F.3d 1533, 1540 (D.C. Cir. 1993). The "threshold" inquiry is whether the documents were "compiled for law enforcement purposes." *Bartko v. United States Dep't of Just.*, 898 F.3d 51, 64 (D.C. Cir. 2018).

Defendant's 7(A) records "consist[] of the investigative file of an ongoing administrative investigation by the USMS' Internal Affairs Office, Office of Professional Responsibility (OPR-IA)" into the conduct of unnamed USMS officials involved in Mr. Robinson's death. (Dkt. 57-1 ¶ 6.) In other words, the records were compiled in connection with an "internal investigation[] directed at the investigating agency's own activities and employees." *Stern v. F.B.I.*, 737 F.2d 84, 89 (D.C. Cir. 1984). "Internal agency investigations present special problems in the Exemption 7 context, for it is necessary to distinguish between those investigations conducted 'for a law enforcement purpose,' and those in which an agency, acting as the employer, simply supervises its own employees." *Id.* "[A]n agency's investigation of its own employees is for 'law enforcement purposes' only if it focuses directly on specifically alleged . . . illegal acts of particular identified officials . . . which could, if proved, result in civil or criminal sanctions." *Id.* Otherwise, "the agency

10

[is] acting as an employer, not as law enforcement." *Humane Soc'y of United States v. Animal & Plant Health Inspection Serv.*, 386 F. Supp. 3d 34, 49 (D.D.C. 2019). "The purpose of the investigation is the critical factor." *Bartko*, 898 F.3d at 64. "[T]he investigation [must be] *for* a possible violation of law." *Jefferson v. Dep't of Just., Off. of Pro. Resp.*, 284 F.3d 172, 177 (D.C. Cir. 2002) (emphasis added); *see id.* (investigation must be "related to the enforcement of federal laws").

### 2.   Analysis

Defendant has not shown its internal investigation is "for law enforcement purposes" because there is no evidence the investigation is "for a possible violation of law" or could lead to "civil or criminal sanctions." Defendant says literally nothing about the former. And the most it says about the latter is that "disciplinary proceedings" might result. (Dkt. 57-1 ¶ 13.) That is much too vague. Perhaps some administrative discipline does involve criminal or civil sanctions. But typically it does not. *See Bartko*, 898 F.3d at 65 (contrasting "internal disciplinary matters" with "civil or criminal sanctions"); *Jefferson*, 284 F.3d at 179 (contrasting "disciplinary proceedings" with "civil liability"); *see also Stern*, 737 F.2d at 90 (investigation was for law enforcement

purposes where nothing "suggested that the scope of the sanctions should be limited to administrative discipline"). Defendant does not show its "disciplinary proceedings" fall into the former category rather than the latter. Because Defendant has not "disclose[d] what law the relevant government officials [are] seeking to enforce, and the sanctions available under it," it has not shown its investigation is for law enforcement purposes. *Windel v. United States*, 2005 WL 846206, at *3 (D. Alaska Apr. 11, 2005); *see Bartko*, 898 F.3d at 69 ("OPR [does not] explain what type of investigation it conducted, what violations of law it was investigating, or whether there was ever more than a fleeting possibility of civil sanctions. That is not an investigation with an eye toward law-enforcement proceedings.").

Defendant does provide some information about OPR-IA investigations *generally*. (*See* Dkt. 27-1 at 9–10.) But even assuming this information applies to the Robinson investigation specifically, it does little to help Defendant's case. For example, Defendant says OPR-IA investigations typically determine whether employees breached "USMS policies, regulations, and standards." (Dkt. 27-1 at 10.) But it is not at all clear these breaches would constitute "violation[s] of law" giving

12

rise to civil or criminal sanctions.  *See Bartko*, 898 F.3d at 65 (many violations of "the U.S. Attorney's Manual, the North Carolina Code of Professional Conduct, and other ethical and legal obligations. . . . would bear only on internal disciplinary matters"); *Jefferson*, 284 F.3d at 179 (describing "breaches of internal Department guidelines" as "non-law violations"); *Stern*, 737 F.2d at 89 ("[A]n agency's general internal monitoring of its own employees to insure compliance with the agency's *statutory mandate and regulations* is not protected from public scrutiny under Exemption 7." (emphasis added)).

Moreover, Defendant "could hardly have hoped to satisfy its burden of demonstrating a law enforcement purpose by naming such a huge set of laws." *Patterson v. I.R.S.*, 56 F.3d 832, 837 (7th Cir. 1995).  If OPR-IA is simply investigating whether employees complied with an "entire body" of internal rules—namely, all "USMS policies, regulations, and standards"—it has shown "merely that some ephemeral possibilities of law enforcement were anticipated by the agency in undertaking the investigation."  *Id.* at 838.  "This is insufficient to establish a 'law enforcement purpose' under exemption 7[]."  *Id.*; *see Bartko*, 898 F.3d at 64 ("mere possibility of a legal violation" is insufficient).

13

Other facts also cast doubt on any law enforcement purpose here. First, OPR-IA does not really begin its investigations until "an appropriate . . . law enforcement agency" has completed its own investigation and "all legal aspects of the case have been satisfied (e.g., declination of prosecution by prosecutor)." (Dkt. 27-1 at 9.) If "all legal aspects of the case" have already been resolved by the time OPR-IA enters the scene, it would be odd if OPR-IA essentially redid that work by looking for "possible violation[s] of law" with a view to "civil or criminal sanctions."[5] Second, OPR-IA does not actually determine whether a violation occurred or whether discipline is appropriate. A USMS review board does the former, and the "Human Resources Division, Employee and Labor Relations Branch" (in consultation with management) does the latter. (*Id.* at 10.) That human resources makes the disciplinary decisions suggests we are dealing with run-of-the-mill administrative discipline, not criminal or civil sanctions as required under Exemption 7(A). Finally, OPR-IA's mission appears to "focus primarily on internal disciplinary matters." *Bartko*, 898 F.3d at 65. According to Defendant,

---

[5] The U.S. Attorney's Office had "declined to pursue further criminal investigation" into Mr. Robinson's death by early 2019 at the latest. (Dkt. 30-6 at 8.)

OPR-IA "ensures all allegations of misconduct and integrity violations are analyzed and investigated in compliance with DOJ and USMS policies and procedures." (Dkt. 27-1 at 9.) "Absent from that assignment is any reference to the investigation of criminal wrongdoing or violations of law." *Bartko*, 898 F.3d at 65–66 (discussing OPR's mandate to investigate "allegations of misconduct"). This suggests "OPR's responsibilities [are on] the 'internal agency monitoring' end of the spectrum, where Exemption 7[] has no purchase." *Id.* at 66.

All in all, Defendant has not shown it compiled the 7(A) Records "for law enforcement purposes." So it has not shown those records fall within Exemption 7(A).

### 3.  Conclusion

Because Defendant has not shown it correctly withheld the 7(A) Records under Exemption 7(A), and because those records constitute a sizeable portion of the total records sought by Plaintiff in this case, Plaintiff's claim for the records was "not insubstantial." Plaintiff has obtained relief through a voluntary change in Defendant's position on a

not insubstantial claim.  So Plaintiff "substantially prevailed" and is eligible for attorneys' fees.[6]

## B.    Plaintiff's Entitlement to Fees

"Once a plaintiff has substantially prevailed and thus become eligible for an award of attorney's fees, a court should determine whether the plaintiff is *entitled* to the award." *Lovell*, 630 F.2d at 431 (emphasis added).  The court should make this determination based on "four rather amorphous factors:" "(1) the benefit to the public deriving from the case; (2) the commercial benefit to the complainant; (3) the nature of the complainant's interest in the records sought; and (4) whether the government's withholding of the records sought had a reasonable basis in law." *Id.* at 431–32; *Morley v. Cent. Intel. Agency*, 894 F.3d 389, 391 (D.C. Cir. 2018) ("*Morley II*").  The court may consider other "relevant equitable factors" as well. *Lovell*, 630 F.2d at 432.  Ultimately, "whether to award attorneys' fees is left to the sound discretion of the court." *Blue v. Bureau of Prisons*, 570 F.2d 529, 533 (5th Cir. 1978); *see Lovell*, 630

---

[6] Plaintiff's other FOIA requests were also "not insubstantial," including because Defendant complied with them and never disputed their merit.

16

F.2d at 431 ("[A]n attorney's fees award under the FOIA . . . is discretionary rather than presumptive.").

Plaintiff claims it is entitled to attorneys' fees because its document requests are in the public interest (factors 1–3) and Defendant's initial invocation of Exemption 7(A) was unreasonable (factor 4). (Dkt. 52 at 9–11.) Defendant says Plaintiff is not entitled to attorneys' fees because Defendant correctly invoked Exemption 7(A). (Dkt. 57 at 2–8.) The Court agrees with Plaintiff.

### 1.    Entitlement Factors 1–3

### a)    Legal Principles

The Court first considers (1) the public benefit deriving from this lawsuit; (2) the commercial benefit to Plaintiff; and (3) the nature of Plaintiff's interest in the records sought. *Lovell*, 630 F.2d at 431–32. These "factors assist a court in distinguishing between requesters who seek documents for public informational purposes and those who seek documents for private advantage." *Davy v. C.I.A.*, 550 F.3d 1155, 1160 (D.C. Cir. 2008). "The former engage in the kind of endeavor for which a public subsidy makes some sense, and they typically need the fee

incentive to pursue litigation; the latter cannot deserve a subsidy as they benefit only themselves and typically need no incentive to litigate." *Id.*

"The first factor assesses 'the public benefit derived from the case,' and requires consideration of both the effect of the litigation for which fees are requested and the potential public value of the information sought." *Id.* at 1159. "'[T]he effect of the litigation' inquiry is properly understood as asking simply whether the litigation has caused the release of requested documents." *Morley I*, 810 F.3d at 844. "To have 'potential public value,' the request must have at least a modest probability of generating useful new information about a matter of public concern." *Id.* "The higher this probability and the more valuable the new information that could be generated, the more potential public value a request has." *Id.* "[T]he complainant's victory [must be] likely to add to the fund of information that citizens may use in making vital political choices." *Blue*, 570 F.2d at 534.

"Factors two and three—the commercial benefit to the FOIA plaintiff and the plaintiff's interest in the requested information—are often combined into a single factor." *Scott*, 2021 WL 2882012, at *5. "These factors assess whether a plaintiff has sufficient private incentive

18

to seek disclosure of the document without expecting to be compensated for it." *Id.* "[W]here a party is motivated by self-interest or seeks to advance his private commercial interests, an award of costs is generally inappropriate." *Id.* That is so because "self-interest" and "pecuniary benefit" are generally "sufficient to insure the vindication of rights given in the FOIA." *Blue*, 570 F.2d at 534. The FOIA thus has a "preference for public interest groups, indigents and disinterested scholars over private commercial enterprises' efforts for disclosure." *Id.*

### b)   Analysis

Plaintiff's discussion of factors 1–3 is limited to a single paragraph devoid of any citation to authority or any meaningful citation to the record. (Dkt. 52 at 9–10.) This would normally make recovery difficult— if not impossible—because "[t]he burden is on the plaintiff to establish entitlement." *Abernethy v. I.R.S.*, 909 F. Supp. 1562, 1567 (N.D. Ga. 1995). But Plaintiff cites the sworn declaration of attorney Richard L. Robbins. (Dkt. 52 at 9.) Mr. Robbins claims—while opining on the reasonableness of Plaintiff's requested fee amount—that "[t]his lawsuit involved a matter of great public importance," the FOIA records were "important to [Plaintiff's] investigation," and the production of those

19

records "would have been in the public interest."  (Dkt. 52-1 ¶¶ 17, 23.)

While conclusory, the Court accepts these assertions as the importance

of a district attorney investigating the death of a citizen is fairly obvious.

More importantly, Defendant has not opposed or otherwise responded to

Plaintiff's argument.   So Defendant effectively concedes factors 1–3

weigh in Plaintiff's favor.  The Court will not ignore that concession.

Other facts also support Plaintiff's position.  As to factor 1, the

Court takes judicial notice of several news articles,[7] petitions,[8] and other

public documents[9] discussing Mr. Robinson's death.   *See U.S. ex rel.*

*Osheroff v. Humana Inc.*, 776 F.3d 805, 812 n.4 (11th Cir. 2015) ("[C]ourts

---

[7]   *See,   e.g.*,   https://www.aljazeera.com/features/2020/6/30/atlanta-mothers-mourn-sons-executed-by-police;
https://www.fox5atlanta.com/news/calls-for-justice-for-jamarion-robinson-on-what-would-have-been-his-31st-birthday;
https://www.cbs46.com/news/justice-remains-elusive-for-college-student-shot-76-times-by-police/article_11cbe1a4-d792-11ea-8d49-1f5e2173a9fe.html;         https://www.ajc.com/news/local/one-year-later-mother-asks-why-bullets-riddled-son-body/gbLgpqUUk5GeMQQJMfOUDM/.

[8] *See, e.g.*, https://www.change.org/p/department-of-justice-justice-for-jamarion-robinson;
https://petitions.trumpwhitehouse.archives.gov/petition/justice-jamarion-robinson-0.

[9] *See, e.g.*,
https://en.wikipedia.org/wiki/Shooting_of_Jamarion_Robinson;
https://justiceforjamarion.org/.

may take judicial notice of documents such as the newspaper articles at issue here for the limited purpose of determining which statements the documents contain (but not for determining the truth of those statements).").   These materials suggest Mr. Robinson's death "has garnered significant public attention and generated substantial public discussion." *Siegelman*, 2019 WL 1513979, at *5.   And that suggests Plaintiff's document requests—which sought information about the death—offered "potential public value." *Id.*

As to factors 2–3, the Court cannot see how Plaintiff—a district attorney's office—could benefit commercially from the records sought. (*See* Dkt. 30-3 ¶ 80.)   And Plaintiff's principal interest in the records appears to be "the pursuit of evidence, answers, and accountability for the unexplained shooting of a civilian." (Dkt. 52 at 9; *see* Dkt. 52-1 ¶ 17.) That is, Plaintiff sought the records to determine whether it should prosecute anyone involved in the shooting. (*See* Dkt. 30-6 at 7 ("We are investigating whether the use of force employed as to Jamarion Robinson was justified, or whether possible murder and/or aggravated assault charges are necessary.").)   This "public-interest oriented" goal supports a fee award. *Lovell*, 630 F.2d at 433.

Given Defendant's concession, and the record more generally, the Court finds factors 1–3 weigh in Plaintiff's favor.

### 2.   Entitlement Factor 4

"The final factor in determining a plaintiff's entitlement to attorneys' fees under FOIA is the reasonableness of the agency's withholdings." *Siegelman*, 2019 WL 1513979, at *7. "To determine the reasonableness of an agency's withholding, a court must consider whether the agency's opposition to disclosure had a reasonable basis in law and whether the agency was recalcitrant in its opposition to a valid claim or otherwise engaged in obdurate behavior." *Id.* "The agency carries the burden of showing that it behaved reasonably." *Id.*

Defendant claims it acted reasonably because "the law clearly supported the USMS' original decision to withhold the 7(A) Records under FOIA Exemption 7A." (Dkt. 57 at 8.) But the Court has already determined the records were not exempt. And Defendant has done nothing to show its assertion of Exemption 7(A) was reasonable though ultimately incorrect. So factor 4 also weighs in Plaintiff's favor.[10]

---

[10] Defendant's assertion of Exemption 7(A) in response to Plaintiff's third FOIA request was improper for the additional reason that Defendant

### 3.   Conclusion

All four factors favor Plaintiff, and it is thus entitled to fees. Moreover, even if Defendant were right that factor 4 (the only factor it addresses) weighs in its favor, the Court would still conclude fees are appropriate.  "[W]hen the four factors point in different directions, the district court has very broad discretion in deciding how to balance those factors and whether to award attorney's fees." *Morley II*, 894 F.3d at 391 (only in "rare case[s]" would reversal be appropriate); *see Blue*, 570 F.2d at 534 ("[A]ll four criteria are to be weighed.").  Given that Defendant did nothing to address factors 1–3, that those factors all favor Plaintiff, and that only factor 4 could conceivably favor Defendant, the Court finds a fee award appropriate here.  *See Mendez-Suarez v. Veles*, 698 F. Supp. 905, 908 (N.D. Ga. 1988) ("[T]he government's basis for failing to release

---

failed to "make a reasonable effort to estimate the volume of any [exempt] matter" and to "provide . . . such estimate to the person making the request." 5 U.S.C. § 552(a)(6)(F).  In its letter denying Plaintiff's request, Defendant said nothing about the volume of records responsive records covered by the exemption.  (*See* Dkt. 30-10.)  It had to do so ("unless providing such estimate would harm an interest protected by the exemption," which seems unlikely here).  5 U.S.C.  § 552(a)(6)(F); *see Mobley v. Dep't of Just.*, 845 F. Supp. 2d 120, 124 (D.D.C. 2012) ("plain text of the statute" requires agencies "to make a reasonable effort to estimate the volume of the documents withheld").

documents is only one of many equitable factors that the Court may consider."); *see also Sage v. N.L.R.B.*, 1987 WL 46834, at *2 (W.D. Mo. Nov. 4, 1987) ("The first factor has been described as 'probably the most important consideration in determining entitlement to fees in a FOIA case.'" (quoting *Miller v. U.S. Dep't of State*, 779 F.2d 1378, 1389 (8th Cir. 1985)).

### C.   Plaintiff's Fee Amount

Having concluded Plaintiff is entitled to attorneys' fees, the Court must now determine the reasonableness of Plaintiff's requested fee amount.  "The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983).  "This number is called the lodestar." *Ela v. Destefano*, 869 F.3d 1198, 1203 (11th Cir. 2017).  "[T]here is a strong presumption that the lodestar is the reasonable sum the attorneys deserve." *Id.*  But "[u]ltimately, the computation of a fee award is necessarily an exercise of judgment, because there is no precise rule or formula for making these determinations." *Villano v. City of Boynton Beach*, 254 F.3d 1302, 1305 (11th Cir. 2001).

24

Plaintiff seeks $135,318.30 in attorneys' fees and $1,599.88 in litigation costs. (Dkt. 59 at 15.) Defendant asks the Court to reduce this amount because (1) Plaintiff's requested hourly rate is unreasonable; (2) Plaintiff seeks fees for unsuccessful or unnecessary work; (3) Plaintiff seeks fees for non-FOIA work; and (4) Plaintiff is not entitled to substantial fees for litigating its own fee requests. (Dkt. 57 at 16–25.) The Court considers each argument below.[11]

### 1.   Hourly Rate

"A reasonable hourly rate is the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation." *Norman v. Hous. Auth. of City of Montgomery*, 836 F.2d 1292, 1299 (11th Cir. 1988). "[T]he relevant market for purposes of determining the reasonable hourly rate for an attorney's services is the place where the case is filed." *Am. C.L. Union of Georgia v. Barnes*, 168 F.3d 423, 437 (11th Cir. 1999). "The applicant bears the burden of producing satisfactory evidence that the requested rate is in line with prevailing market rates." *Norman*, 836 F.2d

---

[11] Defendant also challenges other fees Plaintiff has already deducted. (*See* Dkts. 52-4 ¶¶ 30–34; 59 at 13–14.) Those challenges are moot.

at 1299. "[S]atisfactory evidence necessarily must speak to rates actually billed and paid in similar lawsuits." *Id.* "[T]he affidavit of the attorney performing the work" is not enough. *Id.* "Evidence of rates may be adduced through direct evidence of charges by lawyers under similar circumstances or by opinion evidence." *Id.* "The weight to be given to opinion evidence of course will be affected by the detail contained in the testimony on matters such as similarity of skill, reputation, experience, similarity of case and client, and breadth of the sample of which the expert has knowledge." *Id.* "[T]he district court is entitled to rely on its own experience and judgment in coming to a reasonable hourly rate." *Martinez v. Hernando Cty. Sheriff's Off.*, 579 F. App'x 710, 714 (11th Cir. 2014).

Plaintiff seeks fees based on hourly rates of $425–650 for partners (13–37 years' experience), $290–$385 for associates (4–10 years' experience), and $225 for a paralegal (26 years' experience), all of whom work at the law firm Bradley Arant Boult Cummings LLP. (Dkt. 52-4 ¶¶ 37, 41–42.)   Plaintiff has submitted two affidavits by Richard L. Robbins—an experienced litigator in the Atlanta area—in support of these rates. (Dkt. 52-1; 65-1.)  Mr. Robbins opines that (1) the attorney

26

rates are "reasonable and, in fact, on the low side for attorneys with similar experience, credentials, and capabilities who are in large law firms in the Atlanta area;" and (2) the paralegal rate is "reasonable and comparable to the rates charged by many law firms in the Atlanta area for paralegals with similar levels of experience." (Dkt. 65-1 ¶¶ 8–9.) These opinions are based on Mr. Robbins' own knowledge and experience, "input from prominent attorneys who . . . have also handled FOIA and [Open Records Act] disputes," and "publicly available and media reports on billing rates and fees charged by large firms for such matters, including representation for government entities." (*Id.* ¶ 6.)

Defendant initially claimed Mr. Robbins' first affidavit was insufficient because (1) Mr. Robbins has no experience with FOIA cases and (2) he does not say Plaintiff's hourly rates are reasonable for FOIA cases specifically. (Dkt. 57 at 17–18.) But Mr. Robbins has since provided a second affidavit that cures those alleged deficiencies. (Dkt. 65-1.) So Defendant's argument fails.

Given Mr. Robbins' sworn declarations, and the Court's own knowledge and experience of the Atlanta legal market, the Court finds Plaintiff's hourly rates are reasonable.

### 2. Unsuccessful/Unnecessary Work

"[I]t is appropriate to alter the lodestar to reflect attorney success or the lack thereof." *Yellow Pages Photos, Inc. v. Ziplocal, LP*, 846 F.3d 1159, 1164 (11th Cir. 2017). This means "the district court must deduct time spent on discrete and unsuccessful claims." *Norman*, 836 F.2d at 1302. Courts should also deduct "excessive, redundant or otherwise unnecessary hours." *Id.* at 1301. Redundant hours occur where a client has multiple attorneys who "unreasonably do[] the same work." *Id.* Excessive or unnecessary hours are "hours spent on activities for which [an attorney] would not bill a client of means who was seriously intent on vindicating similar rights, recognizing that in the private sector the economically rational person engages in some cost benefit analysis." *Id.* "In the final analysis, exclusions for excessive or unnecessary work on given tasks must be left to the discretion of the district court." *Id.*

### a)   Defendant's Motion to Strike

Defendant says Plaintiff cannot recover fees ($1,435.50) for "preparing a response to [Defendant's] motion to strike the original complaint" because Plaintiff "did not prevail on this motion." (Dkt. 57 at 20.)   The Court disagrees.   Defendant moved to strike portions of Plaintiff's initial complaint.   (Dkt. 12.)   Plaintiff then (1) amended its complaint by "eliminating and/or modifying many of the allegations to which Defendant objected," and (2) filed a response brief claiming Defendant's motion should be denied as moot or, alternatively, on the merits.   (Dkt. 14 at 1–2.; *see* Dkt. 13)   The Court denied Defendant's motion as moot, which is exactly what Plaintiff asked it to do.   (March 13, 2019 Docket Entry.)   So, technically, Plaintiff did prevail on the motion.

But Defendant's argument fails for a more important reason. "Although the Eleventh Circuit has directed courts to deduct fees for discrete and unsuccessful *claims*, there is no requirement that the district court deduct fees for discrete and unsuccessful *motions*." *Guetzloe Grp., Inc. v. Mask*, 2007 WL 2479335, at *3 (M.D. Fla. Aug. 28, 2007) (emphasis added); *see Schindler Architects, Inc. v. Fid. & Guar. Ins. Underwriters, Inc.*, 2008 WL 11399573, at *4 (S.D. Fla. Feb. 15, 2008)

("[T]he Court may only deduct time spent on discrete and unsuccessful claims, not motions.").[12]  So even assuming Plaintiff did not prevail on the motion to strike, that does not require a deduction.   Plaintiff's response to the motion "was not frivolous and was [work] for which an attorney would bill a client of means who was seriously intent on vindicating similar rights." *Guetzloe Grp.*, 2007 WL 2479335, at *3.  "As it would be reasonable to bill the client for this work, the Court finds that it is not unreasonable to bill the adversary for it." *Id.*

### b)  Discovery

Defendant says Plaintiff cannot recover fees ($20,678.70) for "drafting discovery requests and attempting to compel responses to the requests" because this work was "unnecessary." (Dkt. 57 at 20–21.) The

---

[12] *See also Cabrales v. Cty. of Los Angeles*, 935 F.2d 1050, 1053 (9th Cir. 1991) ("If a plaintiff ultimately wins on a particular claim, she is entitled to all attorney's fees reasonably expended in pursuing that claim—even though she may have suffered some adverse rulings."); *Chism v. FCA US, LLC*, 2021 WL 1181744, at *4 (C.D. Cal. Feb. 16, 2021) ("[P]laintiffs' counsel are still entitled to fees for time reasonably expended on unsuccessful motions or briefing.").  Some courts take a different view. *See, e.g.*, *White v. Imperial Adjustment Corp.*, 2005 WL 1578810, at *11 (E.D. La. June 28, 2005) ("When using the lodestar method to award attorney fees, courts routinely deduct time spent on unsuccessful, unfounded or unnecessary pleadings, motions, discovery requests and memoranda.").  And there may be circumstances in which that view is the better one.  But not here.

Court again disagrees. Defendant previously argued discovery was "unnecessary and unwarranted in this case." (Dkt. 21 at 8.) But the Court rejected that argument and ordered a four-month discovery period. (Dkt. 22.) Plaintiff was entitled to seek discovery during that period. And the discovery it ultimately sought was not unreasonable. (*See* Dkt. 57-3 at 5–27.) A deduction is not required.

### 3.    Non-FOIA Work

Defendant next claims Plaintiff cannot recover fees ($22,280.95) for "work it did in connection with its *Touhy* request[s]." (Dkt. 57 at 23.) The Court agrees. FOIA allows a plaintiff to recover "attorney fees and other litigation costs reasonably incurred *in any case under [the FOIA]*." 5 U.S.C. § 552(a)(4)(E)(i) (emphasis added). Plaintiff's *Touhy* work, by definition, was not done in a *FOIA* case. "FOIA requests are different and distinct from *Touhy* requests and both are governed by two separate standards, regulations and procedures." *Benhoff*, 2016 WL 6962859, at *3 n.5. That is so even when there is overlap among *Touhy* and FOIA

requests, as Plaintiff claims is the case here. The Court deducts $22,280.95 from Plaintiff's fees.[13]

### 4.   Fee Litigation

Finally, Defendant says Plaintiff should recover a maximum of $10,000—rather than the $35,224.40 it seeks—for litigating its own fee request. (Dkt. 57 at 24–25.) Defendant appears to have plucked this number ($10,000) out of thin air. The Court declines to use it as an arbitrary cap on Plaintiff's award. In this Circuit, "attorney's fees may be awarded for time spent litigating the fee claim." *Johnson v. State of Miss.*, 606 F.2d 635, 638 (5th Cir. 1979). Plaintiff has twice litigated its entitlement to fees, once at summary judgment and again in its current application. And Plaintiff prevailed both times. The Court sees nothing unreasonable about Plaintiff's requested fees for litigating its fee claim.[14]

---

[13] Plaintiff does not dispute it incurred this amount in its *Touhy* work. (*See* Dkts. 57 at 23; 57-2 at 21–24; 59 at 14.) Even assuming there are exceptional circumstances in which *Touhy* work could also count as FOIA work, Plaintiff has not shown those circumstances exist here.

[14] One caveat: Plaintiff's reply brief "reserves the right to supplement [Plaintiff's] request to include work performed since August in pursuit of its fees and costs." (Dkt. 59 at 15.) If Plaintiff does elect to seek additional fees for its work on this motion, the Court is unlikely to grant that request. That is so because, in resolving Plaintiff's motion, the Court ultimately had to do the heavy lifting on its own. Plaintiff did little to

### 5.    Conclusion

The Court deducts $22,280.95 from Plaintiff's requested fee of $135,318.30.  That results in a total award of $113,037.35 in attorneys' fees and $1,599.88 in litigation costs.  Given the record and the Court's own knowledge and experience, the Court concludes these amounts are reasonable and appropriate in this case.

## IV.    Conclusion

The Court **GRANTS** Plaintiff's Motion for Attorney Fees and Costs (Dkt. 52).  The Court **DIRECTS** the Clerk to enter judgment in Plaintiff's favor in the amount of $114,637.23 ($113,037.35 in attorneys' fees and $1,599.88 in costs).

**SO ORDERED** this 16th day of September, 2021.

_____
MICHAEL L. BROWN
UNITED STATES DISTRICT JUDGE

---

address factors 1–3 of the entitlement test.  And Plaintiff's briefing on factor 4 was not persuasive.  The Court ultimately determined factor 4 weighed in Plaintiff's favor but it did so based on an argument that Plaintiff never developed.  *See Erwin v. U.S. Dep't of State*, 2013 WL 842601, at *6 (N.D. Ill. Mar. 6, 2013) ("[T]he court cannot conclude that the investigation was for law enforcement purposes.  Erwin failed to make this particular argument, but there is no forfeiture because the Department has the burden of proving that it is entitled to the exemption.").